ANTONIO CHIANESE et ux., complainants,

*v.*

CONCETTA CACHIA, defendant.

[Decided November 25th, 1925.]

Specific Performance—Defendant Alleges Herself to be a Married Woman Whose Husband Had Not Joined in Agreement to Sell—Facts Considered and Found that She Had Lived Alone Many Years, Had Represented Herself a Widow to Complainants, and Had Executed Mortgages as a Widow, That Her Husband Had Not Been Heard From For Many Years, Except Through Son-in-law, Who Claims to Have Seen Him in Italy Two Years Ago—This Testimony Not Accepted and Performance Decreed.

On final hearing.

*Mr. Joseph J. Felcone,* for the complainants.

*Mr. John H. Kafes,* for the defendant.

BUCHANAN, V. C.

The bill is by vendees against vendor for specific performance of a contract of sale of real estate in this county. The sole defense is that defendant was a married woman at the time of execution and acknowledgment of the contract, and that specific performance cannot be decreed against her because her husband did not join in the contract.

It is undoubtedly true that if she had a husband living at the time, the contract cannot be specifically enforced, because of the lack of her husband's joining with her therein (*Corby* v. *Drew, 55 N. J. Eq. 387, 392; Schickhaus* v. *Sanford, 83 N. J. Eq. 454, 457; Married Women's Act § 14*), although she may be liable at law for the breach of the contract.

The only issue, therefore, is the one of fact, as to whether she did, in fact, have a husband living. The defense set up is both an affirmative defense and a legal (as distinguished from an equitable defense). The burden of proof to establish it is on the party asserting it. *Page* v. *Martin, 46 N. J. Eq. 585; Crandall* v. *Graham, 93 N. J. Eq. 675, 680.*

This burden, to my mind, she has failed to meet. She executed and acknowledged the contract as a widow. Complainants say that she induced the contract by telling them she was a widow; that her husband had died in a hospital in a hospital in Italy two years before. Defendant did not deny having made this statement to complainants. She had on two occasions—one seven years ago, the other nine years ago —executed and acknowledged mortgages as a widow. Her explanation is that her husband left her thirteen years ago and that she had not seen or heard from him thereafter; that she believed him dead and continued in this belief until a few weeks after the execution of the contract, when she was told by one John Lanza in April, 1924, that he had seen her husband two years before in Italy; that upon thus learning that he was alive she declined to carry out the contract, because she wanted to protect him and his rights.

This story is not worthy of credence. It is not to be believed that a wife and mother callously deserted by a husband for twelve or thirteen years, and left to support herself and their child by her own exertions alone, without one word of communication from him of any kind, would have any such solicitude or regard for such a husband or his interest in property which she had acquired as the result of her own labors. The truth as to her regard for him clearly appears from her admission that she has never yet, in the year and a half since Lanza told her that her husband was living, made any effort whatever to communicate with him. Her conduct speaks more forcibly than her words.

In order to exclude the possibility that her refusal to consummate the sale might be due to a belief that she had no legal right or power to convey, she was asked by the court

whether she would be willing, at the expense of complainants to take proceedings under the Married Women's act, to enable her to sell and convey to complainants without the joinder of a husband who had deserted and failed to support her, but this she declined, giving as the reason that "if" her husband had done a wrong she was willing to forgive him, and intended to protect him and any rights he might have in the property.

All this, in conjunction with her manner on the stand, and her significant refusals to answer questions as to her opinion as to the value of the property, lead inescapably to the belief that the true reason for her refusal to convey is that she has repented of her bargain and has put forward the story of her husband's existence as a means of avoiding performance.

From the evidence that the husband disappeared and had not been heard of for twelve or thirteen years, the presumption arises that he is dead and was dead at the time of the contract in March, 1924. What evidence is there to rebut this presumption? Nothing whatever but the testimony of John Lanza, and that is insufficient.

Lanza is by no means without interest in the result of the suit, being the defendant's son-in-law. Nor was he a satisfactory witness. Amongst other things, he said that he saw defendant's husband in Foggia, Italy, yet he could not say whether Foggia was the name of a city or town or of a province; nor could he give the name of the city or town where he saw him. Of much greater importance, however, is the fact that his testimony in so far as identifying the man he says he saw as defendant's husband, is nothing but hearsay, and, hence, incompetent. Lanza is now twenty years old. He says he saw defendant's husband in Italy four years ago. He had not seen him before that since he was four or five years old. He did not recognize him visually, but he says he recognized his voice. That he should remember and recognize, after eleven or twelve years, the sound of a voice that he had last heard when a child of four or five, is not to be believed. His belief that the man was defendant's hus-

band (if he, in fact, had such belief), obviously rests solely upon what he was told by his father and mother who were with him at the time, and is therefore hearsay.

It is significant that neither his father or mother were produced as witnesses, although they live in Philadelphia, and, apparently, could readily have come to testify, or, at least, could have had their testimony taken by commission.

I conclude, therefore, that defendant has failed to prove that she had a husband living when she made the contract; that on the preponderance of the evidence the contrary is established, and that, her contract having been duly acknowledged by her under the statute, complainants are entitled to decree for specific performance.

The decree will carry the costs and counsel fee. Counsel may be heard on motion day as to the amount of the latter.